# No. 13-1025

# In the United States Court of Appeals for the First Circuit

**United States of America,**
Appellee,

v.

**JOSE BAEZ**
Defendant-Appellant.

**On Appeal from the United States District Court For the District of Massachusetts**

**Reply Brief of the Defendant-Appellant**

GORDON W. SPENCER
First Cir. No. 70402

Attorney at Law
945 Concord Street
Framingham, MA 01721
(508) 231-4822

*Counsel for Jose Baez*

October 25, 2013

## Table of Contents

Table of Contents ................................................................................. i

Table of Authorities ............................................................................ ii

ARGUMENT ....................................................................................... 1

    I.    THE ATF CANNNOT EXTRAPOLATE KNOTTS TO ENGAGE IN ABUSIVE PRACTICES OF GPS DEVICES …………………………….1

        1. *Is tracking a person based upon the possibility that a person might commit a crime, but only if that person is provoked by someone else, an indiscriminate or abusive practice of tracking?* ..............................................................................................5

CONCLUSION ..................................................................................... 9

CERTIFICATE OF COMPLIANCE................................................... 7

CERTIFICATE OF SERVICE ............................................................ 8

## Table of Authorities

Cases

*United States v. Jones,*
    132 S. Ct. 945 (2012)............................................................................... 8

*United States v. Knotts,*
    460 U.S. 276 (1983)………………………………………………….1, 3-8

*United States v. Sparks,*
    711 F. 3d 58, 65 (2013) ................................................................. 1-3, 5

**Argument**

## THE ATF CANNOT EXTRAPOLATE THE RULE IN KNOTTS TO ENGAGE IN ABUSIVE INVESTIGATIVE PRACTICES OF GPS DEVICES

The government's opposition was succinct and to the point, but not precise. They very aptly developed their argument that the outcome of this case is controlled by *United States v. Sparks,* 711 F.3d 58 (2013). They stated in very direct terms that *Sparks* gives law enforcement a good-faith pass to monitor a vehicle's movement when it travels on public roads, highlighting also that the duration of the tracking is immaterial on determining whether that good-faith is masquerading as bad-faith. (Government's Brief at 10-11).

However, *Sparks* does not stop there. *Sparks* goes on to state further, and essentially, that any good-faith pass afforded to law enforcement to "attend the concert", is not an actual ticket to go "back-stage" and start forging ahead with uncertain investigative methods.[1] Although *Sparks* states the rule in more formal terms, there can be no dispute that a clear and well-settled boundary has been drawn by the *Sparks* court, which should ***also*** control the outcome of this case.

It is noteworthy to mention in this rebuttal that the *Sparks* rule stated above was never mentioned by the Government in its opposition, and becomes

---

[1] *Sparks* at 67. Of course, what *Sparks* actually said was "[The] good-faith exception to the exclusionary rule is not a license for law enforcement to forge ahead with new investigative methods in the face of uncertainty as to their constitutionality".

1

demonstrative evidence of their imprecision in opposing the Appellant's claim of relief. In pages 19-23 of Baez's brief (but really woven throughout the entire pleading) he focuses on this very rule espoused in *Sparks*, which requires law enforcement to "paint inside the lines", as a centerpiece of his discussion concerning why the ATF must refrain from exploiting clear and well settled principles of law for investigative advantage. Baez's discussion on this issue was outright ignored by the government. Rather they chose to focus on their "money cards" – namely that the 4th Amendment is not implicated by GPS tracking, and time duration of tracking is immaterial to the discussion (Gov't Br. at 11).

In rebuttal, Baez rhetorically asks, "what about law enforcement forging ahead with an investigative method which has an Orwellian-like smell to it? Would such a surge be a clearly and well-settled practice under any case in any circuit"? The bottom line is that Jose Baez must concede that the *Knotts* rule was "clear and well-settled" that the 4th amendment was not implicated when law enforcement monitors a vehicle on public roads. What the Appellant does not concede (and the Government expressed no developed counter-opinion on the issue) is that the rule in *Knotts* was "clear-and well settled" to allow indiscriminate or abusive usage of tracking devices, just because the non-abusive usage of tracking devices fell outside the 4th amendment. This is because the Supreme Court in *Knotts*, while clearly authorizing the usage of tracking devices, still

2

reserved judgment on the indiscriminate/abusive usage of tracking devices for another day.² Even *Sparks* acknowledges the margins of the *Knotts* rule by stating that law enforcement "cannot forge ahead with [abusive practices] in the face of its constitutional uncertainty". *Sparks* at 67.

Baez thus argues that when the ATF attached the GPS device to his vehicle, the rule which guided this practice (promulgated by *United States v. Knotts*) was, colloquially speaking:

>"you can without a warrant, but don't abuse it" ³

---

² Baez understands that the *Knotts* Court did not explicitly include "indiscriminate usages" of tracking devices as part and parcel of the type of Orwellian practices which they declined to consider, but such a circumstance is a mere consequence of semantics. Baez has applied common sense to appreciate that when the *Knotts* court declined to consider Orwellian practices, that "Orwellian" is the equivalent of "abuse", and "abuse" is the equivalent of "indiscriminate". To suggest that the Supreme Court meant some abusive practices (i.e., dragnet prosecutions, etc.) and not others has no support from a sensible approach.

³ The government may differ, claiming that the *Knotts* court dismissed the request to promulgate an edict to the police, ordering them to refrain from the abusive use of tracking devices. Although what the *Knotts* court actually did was dismiss the request to consider future abusive ramifications of the rule, Baez still appreciates the point. Whatever the *Knotts* court brusquely dismissed, we must still not forget, however, that *Knotts* rendered its dismissal with one caveat – and a caveat which becomes operative here. That caveat ***promised*** that the Supreme Court would take up the issue of abuse, if and when the issue became material in the future. What is interesting to note is that the Respondent in *Knotts* never argued actual abuse, only theoretical abuse. The Respondent merely forewarned the Supreme Court that they are setting up future Defendants (like Baez perhaps) for being abused by the rule in *Knotts*. Of course Baez gives no Orwellian warning in his brief, but instead claims actual abuse by the ATF when they tracked his vehicle. Perhaps, the rule in *Knotts* therefore would actually be; "you can use tracking devices to monitor cars without a warrant, but if you abuse it, that could change".

3

If the above-statement has been interpreted by this Court as it has just has been conversationally conveyed, the only question that this Court need answer now is:

> whether treating Jose Baez like a carrier pigeon in just attaching a device to his vehicle, and checking in on him from time to time to see if and when he leaves the nest, was ***abusive***?

If this Court finds that the conduct of the ATF was not an abusive practice, then objectively speaking said conduct was not a "stretch" of the *Knotts* rule, and the officers' were therefore acting in good-faith.  However, if what took place was a stretching of the rule in *Knotts*, then the good-faith doctrine cannot save the ATF under *Sparks* and the evidence garnered from the tracking must be suppressed. Therefore, the case of *United States v. Baez* has been reduced to an objective analysis on what constitutes a "stretch".  Baez responds that if this Court accepts that a stretch of the rule in *Knotts* is consistent with an indiscriminate, abusive, or even Orwellian investigative tactic, then the analysis of this case has actually been further reduced to answering only one question – whether the investigative tactic by the ATF was indiscriminate, abusive, or even Orwellian in its application.

### 1. *Is tracking a person based upon the possibility that a person might commit a crime, but only if that person is provoked by someone else, an indiscriminate practice of tracking?*

The question posed above, interestingly enough, is not one which finds it source from the mind of Jose Baez, but actually from the thought process of the

4

government. On page 20 of the government's brief (emphasis added), they state and Baez quotes:

> "The arsons at J.P. Auto and Back Bay Dental . . . raised the real *possibility* that Baez *might* commit another arson *if* he had another dispute or argument with *someone* else"

Putting aside for the moment that the government's characterization as to why the ATF slapped a GPS tracking device on Baez's vehicle gives new meaning to the word "speculation" and thereby **obliterates** any possible demonstration by the government on whether probable cause to track existed, the fundamental question to ultimately decide is; was this an indiscriminate practice? Or in other words was this practice akin to open-ended tracking upon segments of our society as a whole?

Let's say that law enforcement has come across a person who has demonstrated a tendency to commit violence, even murder, but only upon instances where the person is upset, or unjustifiably provoked. Would law enforcement have the right under *United States v. Knotts* to slap a GPS device on every person with a known propensity to engage in violent behavior, in the interests of public safety, "just-in-case" the person gets angry on any given night? Would such a practice be an indiscriminate one because it lumps these people all into one

5

category – namely that violent people will most assuredly commit violence again?[4] And essentially, would the indefinite tracking of all these persons rise to the level of abuse because the tracking is based exclusively upon who the police believe these people are? And how would it be any less "Orwellian" because they tracked one person for the same reason?

If a person has demonstrated a tendency to drink and drive -- perhaps as evidenced by numerous OUI convictions on their records, would law enforcement have the right under *United States v. Knotts* to indefinitely track every alcoholic in the United States of America, again in the interests of public safety, "just-in-case" one of these persons decides to drink and drive again?  Under *Knotts* could the ATF have the green light to check the comings and goings of these people, and indefinitely no-less,[5] to make sure they are not drinking and driving? And how

---

[4] Of course without the slightest inkling of when violence could or would ever re-surface.

[5] Baez understands of course that no temporal limitation was ever imposed by *Knotts*. It would please the government much to interpret an absence of a temporal limitation as the ATF's ticket to track any citizen of their desire "indefinitely", and with our Federal Courts turning a blind-eye to such a practice because of *Knotts*. Baez merely says in response that this is exactly the type of running amuck that the ATF should not be given credit for. While from a purely technical or theoretical standpoint, the government may be right. No concrete time limits could mean "forever". However, and from a logical and practical standpoint, could (or should) a law enforcement officer "reasonably" think that they can just track a suspect with a GPS device for the rest of his life under *Knotts* and also think that no Federal Court would have a problem with that?

6

would this investigative tactic be any less abusive because the ATF tracked only one person for the same reason?

Cutting to the chase, the ATF tracked Jose Baez, in open-ended fashion, based solely upon a speculative belief that as a "serial arsonist" he may commit crime in the future.[6]  While this objective may be in the interests of public safety, there is no public-safety exception to bad-faith.

---

[6] In the Government's opposition, they raise the novel argument that Baez in essence believes that the ATF acted in Orwellian fashion because Baez equates "Orwellian" with the ATF's lack of probable cause to believe Baez is actively engaged in criminal activity, or will commit future crimes.  (See opposition at p. 11).  The novelty to their argument focuses upon the notion that since probable cause is not needed as a pre-requisite by the ATF before GPS tracking, then the claim by Baez alleging a lack of probable cause is not a valid argument for relief.  This argument does have its strengths, as Baez appreciates that "outside the 4th amendment means outside the 4th amendment", and thus no factual basis (even a speculative one) seems required to justify tracking of our citizens.  However, this claim creates more problems than provides solutions, as it flat out creates an iron-clad cloak of immunity for law enforcement – something we all know the Supreme Court in *Knotts* did not intend to do.  Practically speaking, if the government were to have their way, the *Knotts* rule is absolute, and thus no way for this Appellate Court to analyze whether the ATF had just "cause" to interpret the *Knotts* rule so broadly, and track Jose Baez without restraint, where the same rule purports to immunize law enforcement from scrutiny under any standard of cause.  This is a paradox which the government exploits publically, but must realize privately that one cannot leave this paradox un-reconciled, as we all know that law enforcement must always bear accountability for their actions.  Baez asks this Court to review once again his argument in pages 21-24 of his brief wherein he cites to Justice Scalia when he found in *United States v. Jones* (paraphrasing now) that "all bets are off", when analyzing conduct which does *more than* what precedent has previously allowed. 132 S. Ct. 945, 952 (2012).  Baez argues that tracking a citizen indefinitely based upon totem-pole speculation is *more than* what was approved by the *Knotts* court – their holding on tracking as outside the scope of the 4th Amendment notwithstanding.  Baez believes that operating outside the scope of

Cutting to the chase again, by the ATF indefinitely checking the comings and goings of one person, because of who they believe he is[7], "just-in-case" he may commit a crime again, was never contemplated as being fair-game by *United States v. Knotts*.

---

*Knotts* must call for this Court to undertake, as Justice Scalia undertook, a factual analysis of the facts here to determine whether the tracking done to Baez was **more than** what the precedent in *Knotts* would allow.  The bottom line is that the government's claim that "cause" should not be considered in determining the rights of Jose Baez's is no longer applicable when moving outside the scope of *Knotts* and moving into the realm of abusive investigative tactics.  Furthermore, Baez would further suggest that it is really not the lack of probable cause why Baez believes the ATF acted in Orwellian like fashion.  Baez's brief has not argued that the ATF needs probable cause to engage in abusive investigative practices, and that since probable cause was lacking the evidence should be suppressed.  Baez is arguing that Orwellian-like and abusive investigative tactics paint outside the lines of *Knotts*, and for the ATF to do so here was not in good-faith and requires suppression.  The fact that there was no probable cause for the action as well can merely be chalked up as a given, as any abusive practice cannot find a safe-haven under any type of probable cause standard.

[7] In this case, who the government believes Jose Baez is, was a "serial arsonist".  For the record, Baez would like to dispense with the government's throwing around the moniker of "serial arsonist" once and for all.  For starters, the lower court never found Baez as such, and therefore is a disputed issue of fact.  Second, and equally as important, but to commit arson for retribution makes no person a "serial arsonist" any more than a person who shoots people fueled by vengeance a "serial killer".  If the government were to claim that Jose Baez compulsively commits arson because he obtains some physical, emotional, spiritual, or even sexual gratification from the act, well, that would be one thing.  However, the government merely claims that Baez commits crime for vengeance.  The vengeful person who uses fire as his choice of weapon, makes them no more a "serial arsonist" than the vengeful person who uses a knife or gun a "serial killer".  There is no allegation that Baez commits his crime randomly, or just for the sake of seeing things burn.  Although no experts reside on this side of the caption, Baez would submit that the term "serial arsonist" is being used too loosely here.

Since this type of tracking taken against Baez actually subjects our society as a whole to open-ended tracking, based solely upon: 1) the labeling of the person; and 2) the expectation of future crime based upon that label; it is indiscriminately styled tracking and is therefore abusive.

## CONCLUSION

Baez would end by stating that he relies upon the sum and substance of his brief in support of the argument that to attach a GPS device on a vehicle indefinitely, upon a mere "*possibility*" that a person *"might"* commit a crime, only *"if"*, some "*unknown*" third-party would anger the operator of that vehicle, in the interest of public safety, is **Orwellianesque,** as it is akin to really subjecting our society as a whole to open-ended tracking.  If abusive to our society at large, then it is equally as abusive when done to Jose Baez.  He prays for relief.

                                              Gordon W. Spencer
First Cir. No. 70402
**/s/Gordon W. Spencer**

Gordon W. Spencer
Attorney at law
945 Concord Street
Framingham, MA 01721
(508) 231-4822

*Counsel for Jose Baez*
October 25, 2013

## CERTFICATE OF COMPLIANCE

I, Gordon W. Spencer, hereby certify, in accordance with Fed. R.App.P. 32(a)(7)(C), that the foregoing brief was prepared in 14-point, proportionately spaced serif font (Times New Roman), using WordPerfect 12, that the brief contains 2,781words, and it is therefore in compliance with Fed. R. App. P. 32(a)(7)(B)(ii).

                                       **/s/Gordon W. Spencer**

                                       Gordon W. Spencer
                                       945 Concord Street,
                                       Framingham, MA 01701
                                       (508) 231-4822

October 25, 2013

## CERTIFICATE OF SERVICE

I, Gordon W. Spencer, hereby certify in accordance with Fed. R. App. P. 25(d), that earlier today the foregoing brief was filed, via in-hand delivery with the Clerk of the Court and was served on counsel for the government at the following addresses:

      AUSAS MARK QUINLIVIN AND DAVE TOBIN
              United States Attorney's Office
              John Joseph Moakley Courthouse
              One Courthouse Way
              Boston, MA, 02210

                                  /s/ **Gordon W. Spencer**

                                       Gordon W. Spencer
                                       945 Concord Street
                                       Framingham, MA 01721
                                       (508) 231-4822

October 25, 2013